UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
JOHNNY AYALA,

                    Petitioner,          <u>MEMORANDUM AND ORDER</u>
                                         05-CV-1497 (JS)
        -against-

JAMES WALSH, Superintendent
Sullivan Correctional Facility,

                    Respondent.
--------------------------------X
APPEARANCES:
For Petitioner:      Johnny Ayala, <u>pro</u> <u>se</u>
                     Sullivan Correctional Facility
                     P.O. Box 116
                     Fallsburg, New York 12733

For Respondent:      Thomas J. Spota, Esq
                     Suffolk County District Attorney's Office
                     200 Center Drive
                     Riverhead, New York 11902-3388
                     By: Thomas C. Costello, Esq.

SEYBERT, District Judge:

        Pending before the Court is Petitioner Johnny Ayala's

application for writ of habeas corpus, pursuant to 28 U.S.C.

§ 2254. For the reasons stated below, Petitioner's application is

denied.

<u>BACKGROUND</u>

        On March 19, 1999, at about 10:05 a.m., Thomas Delouker

("Delouker") arrived at Frank's Pigeon Store on Route 111 in

Central Islip, Suffolk County, New York. As a frequent customer,

Mr. Delouker found it odd that, given the time of day, the gates in

front of the store were down, but the store owner's car was parked

in front. Mr. Delouker waited fifteen minutes before leaving.

(Trial Tr. 82-86, March 20, 2000.) Less than an hour later, Delouker, who happened to be a volunteer fire fighter, received a call about a fire; however, Delouker did not respond to the fire because he had to leave for work. Delouker later learned that the fire was at Frank's Pigeon Store.

Robert Miller, Chief of the Central Islip Fire Department, arrived at the scene of the fire at Frank's Pigeon Store at about 10:36 a.m. (Id. at 105.) The front gates of the store were down, but the rear door was open. (Id. at 112.) Suffolk County Police Officer Christopher Talt also responded to the fire. Officer Talt testified that he immediately suspected that the fire was suspicious in nature. The Fire Department notified the Arson Squad of the Police Department. At some point during the search, Edward Freudenberg, a volunteer firefighter, found the body of Thomas Serra, the owner of the store, about four feet in from the rear door. (Id. at 121.)

Suffolk County Detective Robert Ryan, assigned to the Arson Squad, testified at trial that he noticed a strong odor of gasoline near Mr. Serra's body. Detective Ryan also noticed that some of the cages in the front of the building were empty and there was no cash register in the store. (Id. at 233.) After examining the electrical circuit box in the store, Detective Ryan determined that the fire likely did not start from an electrical problem. When a medical examiner arrived at the scene and turned over Mr.

Serra's body, Detective Ryan noticed that the floor underneath the body was not as burned as the surrounding area. Thereafter, the Suffolk County Police Department submitted samples of ash collected near the body as well as the remnant of the victim's clothing to the Trace Evidence Section of the Suffolk County Crime Lab; Margaret Meldon-Sharpe, a forensic scientist with the Crime Lab, later verified that the samples contained traces of gasoline. An autopsy later revealed two blunt injuries to the back of Mr. Serra's head and that he died prior to the start of the fire.

The Suffolk County Police Department later learned that multiple bags of Circle K feed had been stolen from Frank's Pigeon Store and brought for sale in Billy's Pet Shop, owned by William Schmierer ("Schmierer"). Further investigation led to Samuel "Juanito" Santalis ("Santalis") and Petitioner's identification as suspects involved in selling the feed to Schmierer. On March 29, 1999, Detective Douglas McGovern arrested Petitioner and brought him back to the Homicide Squad for questioning. At approximately 8:35 p.m., Detective McGovern read Petitioner his Miranda rights. After reading Petitioner his rights, Detective McGovern asked Petitioner if he was willing to talk to the detectives without an attorney; Petitioner answered yes.

At first, Petitioner denied any involvement with the sale of the stolen feed and Mr. Serra's murder. However, Petitioner's answer changed after Detective McGovern showed Petitioner, through

a one-way mirror, that other detective were interviewing Santalis in another room. Petitioner then stated that he "never wanted to snitch anybody out." (Tr. March 23, 2000 at 59.) Petitioner began to cry and told Detective McGovern that someone named "Tito" assisted Santalis in the robbery and murder. At 10:00 p.m., the detective took a break from questioning. The detectives resumed questioning at approximately 10:26 p.m, after Petitioner had eaten a slice of pizza.

Shortly after midnight, the officers escorted Petitioner to the bathroom. Thereafter, questioning again resumed. At this point, Petitioner's story changed once more. At approximately 12:15 a.m., Petitioner admitted his involvement in the murder. Initially, Petitioner stated that he hit the victim with a piece of wood after Tito had hit the victim repeatedly. Thereafter, Petitioner and Santalis went to a nearby gas station to purchase gasoline. Santalis poured the gasoline around the store, and Petitioner lit the gasoline with a match. Petitioner later changed his story and stated that Santalis hit the victim with a pipe and took $340 from the victim's pocket.

Finally, at some point after 1:00 a.m., Petitioner admitted that he had fabricated the existence of "Tito" and that he and Santalis had acted alone. Petitioner stated that he and Santalis had gone to Frank's, where Petitioner hit Mr. Serra twice over the head with a pipe and told Santalis to hit the victim again

if he got up.  The detectives thereafter took a three-page written statement from Petitioner.  In the statement, Petitioner stated that he decided to rob the store because he "needed money."  The statement read, in pertinent part,

> On Thursday, March 18th, I went to Junito's house in the morning. His niece, Wanda, told me he was still sleeping and that I should come back in an hour. I didn't go back that day. On Friday, March 19th, 1999, I took my wife to work, and then went to Junito's house again. I asked if he was ready to make some money and he said, 'Yes.' He put his shoes on and brushed his teeth. We drove to Frank's on Islip Avenue in Central Islip in Junito's car. I had a pipe with me that was three or four feet long. I told Junito I was going to hit the owner, Tom, with the pipe. We parked the car and went in the front door. I was holding the pipe at my side. Junito walked in behind me. Tommy said, 'What are you doing around here, Scrub?' He always called me names because he knows I used to steal birds from him.

> When Tommy turned around, I hit him on the head with the pipe. I hit him twice and he went down. I gave the pipe to Junito and I told him to hit Tommy again if he got up. I told Junito to get his money. He took the money and we each got 340 dollars. I went out the front door and closed the grate and locked it. I walked around to the back of the gas station where the car was and we drove to Cherry Street in Central Islip to get my brother's van.

> On the way back to Tom's store, we stopped at the gas station across the street and bought two dollars worth of gas. We put the gas in a bucket, in a bucket I had with me in the van. I drove to the back of the store and parked near the back door. We loaded 68 bags of feed and 13 bags of grit into the van. We also took some nesting bowls, trap doors, year bands,

the cash register and three exotic birds.

I told Junito that was enough feed because it was getting too heavy for the van. Junito poured the gas on the floor. It was less than a foot away from Tommy's body. I put some paper bags on the metal wagon and lit the bags with a match. We drove in the van through the back streets and came out on Carleton Avenue in Central Islip. We were going to Billy's new pet store on Connetquot Avenue to sell him the feed and the other stuff.

When I turned on to Carleton Avenue, we met my brother, Adolfo. He wanted to know what I was doing with his van. I told him we were taking feed to Billy's. He said he was - he would follow us in his car. When we got to Billy's, I told him he could buy the feed for five dollars a bag. He knew it came from Tommy's store because he saw the circle with the K inside on the tag on the bags.

Billy said he would give us four dollars each, but we would have to take it to his house. I said, okay. And Billy sent his son, Tommy, Junito, my brother, Adolfo and me unloaded the feed and put it into the basement of Billy's house. We also put the trap doors and the cash register in the basement.

When we were finished, I drove back to Junito's house to get my car. Junito drove the van to Cherry Street. I forgot to say that Billy also knew that the exotic birds came from Tommy's store.

On March 28, 2000, a jury found Petitioner guilty of two counts of Murder in the Second Degree and one count of Arson in the Third Degree. On April 26, 2000, Petitioner was sentenced, as a prior felony offender, to concurrent terms of twenty-five years to life for his murder convictions, and a consecutive term of seven and one-half to fifteen years for the Arson conviction.

6

On appeal, Petitioner argued that: (1) the prosecution engaged in misconduct during summation; (2) there was insufficient evidence to support his conviction; (3) the trial court erred in instructing the jury; and (4) the sentence was excessive. On February 17, 2004, the Appellate Division, Second Department affirmed Petitioner's conviction. The state court found that Petitioner had not preserved for appellate review his objection to the prosecution's remarks, and in any event, the remarks did not require reversal, there was sufficient evidence to support the conviction, and Petitioner's remaining contentions were either unpreserved for appellate review or without merit. See People v. Ayala, 771 N.Y.S.2d 685 (N.Y. App. Div. 2004). On May 26, 2004, the New York Court of Appeals denied Petitioner's leave to appeal. People v. Ayala, 2 N.Y.3d 795, 814 N.E.2d 466, 781 N.Y.S.2d 294 (2004).

On March 16, 2005, Petitioner filed a petition for a writ of habeas corpus. Petitioner argues that: (1) the prosecution engaged in misconduct during summation; (2) there was insufficient evidence to support his conviction; (3) the trial court erred by failing to include in the jury instruction that starting a fire is an essential element of arson; and (4) Petitioner's sentence was excessive.

I.  <u>Standard of Review</u>

Section 2254 provides that a habeas corpus application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  "A state court 'adjudicates' a petitioner's federal constitutional claims 'on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.'"  <u>Norde v. Keane</u>, 294 F.3d 401, 410 (2d Cir. 2002) (quoting <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 312 (2d Cir. 2001)).

"Clearly established federal law 'refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision.'"  <u>Howard v. Walker</u>, 406 F.3d 114, 122 (2d Cir. 2005) (quoting <u>Kennaugh v. Miller</u>, 289 F.3d 36, 42 (2d Cir. 2002)).  A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" a Supreme Court case, or it "confronts a set of facts that are materially distinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result

8

different from [their] precedent." <u>Penry v. Johnson</u>, 532 U.S. 782, 792, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)). A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." <u>Id.</u> (citing <u>Williams</u>, 529 U.S. at 407-08). Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." <u>Williams</u>, 529 U.S. at 411.

II.  <u>Petitioner's Arguments</u>

    A.  <u>Prosecutorial Misconduct</u>

       The standard for reviewing a habeas claim of prosecutorial misconduct is "'the narrow one of due process, and not the broad exercise of supervisory power.'" <u>Darden v. Wainwright</u>, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471, 91 L. Ed. 2d 144 (1986) (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 642, 94 S. Ct. 1868, 1871, 40 L. Ed. 2d 431 (1974)). A federal court must, therefore, distinguish between "'ordinary trial error of a prosecutor and that sort of egregious misconduct . . . amounting to a denial of constitutional due process.'" <u>Floyd v. Meachum</u>, 907 F.2d 347, 353 (2d Cir. 1990) (quoting <u>Donnelly</u>, 416 U.S. at 647-

48).  Habeas relief is available only where the prosecutor's remarks so infected the trial with unfairness that the resulting conviction is a denial of due process.  <u>See</u> <u>Salcedo v. Artuz</u>, 107 F. Supp. 2d 405, 416 (S.D.N.Y. 2000).  Prejudice must be measured by a finding that the comments were not only improper, but "'had a substantial and injurious effect or influence in determining the jury's verdict.'"  <u>Tankleff v. Senkowski</u>, 135 F.3d 235, 252 (2d Cir. 1998) (quoting <u>Bently v. Scully</u>, 41 F.3d 818, 823 (2d Cir. 1994)).

To determine whether the alleged misconduct is so significant as to amount to a denial of due process, the habeas court must "place the[] remarks in context." <u>Darden v. Wainwright</u>, 477 U.S. 168, 179, 106 S. Ct. 2464, 2470, 91 L. Ed. 2d 144 (1986). When analyzing whether a petitioner has shown actual prejudice, the Court should consider the following relevant factors: "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent prejudicial conduct." <u>Bentley</u>, 41 F.3d at 824.

Petitioner alleges that the Prosecutor's misconduct during summation denied Petitioner of a fair trial.  Specifically, he argues that the Prosecution's use of allegedly inflammatory remarks, such as urging the jury to avenge the family's loss or characterizing the Petitioner as a predator, was improper.  For

example, Petitioner points to the following statements made by the prosecution during summation:

> "[W]hen I made my opening statement, I knew what you had not yet known about this defendant and what he did that day. And he is different and he's not like you. And he's not like me. He's different. He's a murderer, and you're sitting twenty feet from a murderer all during this trial. . . . I've been trying murder cases for sixteen years. I know there are bad people out there. I know there are people like the defendant." (Trial Tr. 320-22, March 24, 2000.)

At this point, counsel objected that the prosecutor was injecting her personal opinion into the case. The Judge admonished the prosecutor not to vouch for the validity of the prosecution. Thereafter, the prosecutor stated,

> And there's not a shred of evidence that everything that's in that statement isn't exactly as the detective said it is . . . . And you didn't hear one shred of evidence that everything the Detective McGovern said isn't true. All you heard is constantly pounding on the fact that this defendant can't read. That's a given. Even if he could read better or less, the detective accepted that he couldn't read and read the statement to him. Have you heard any evidence that that's not true? No. So you cannot speculate that that's not true. Who's saying it's not true? The defendant's lawyer. Well would you expect him to come here and tell you, oh yeah, it's true. No. You expect him to say it's not true. (Id. 352-355).

Finally, the prosecutor stated toward the end of her summation:

> You had plenty of opportunity to get out of jury duty and you chose to do your civic duty

and it's not always pleasant. But I'm
confident, the People are confident, that you
will do the right thing. And although I didn't
use the term throw away the keys, when you're
dealing with this situation, maybe that's the
right thing to think, throw away the keys.
Because a predator like the defendant really
can't just be left free. Society needs to be
protected from predators like that. I didn't
use the term throw away the key, but if the
shoe fits, wear it.

Nobody is in this courtroom voluntarily except
the defendant. Because he chose the time, he
chose the place, he chose where, he chose what
he was going to do. These are all decisions
he made. We're here. . . . You stand as a
barrier between justice and injustice and you
control the future of this murderer. And you
can do justice for the state and you can do
justice for the family. The People are
confident that you will not falter. Throw away
the keys. (Tr. 394-98.)

The Appellate Division rejected Petitioner's arguments,

finding that Petitioner's arguments "with respect to a majority of

the remarks [are] not preserved for appellate review as the

defendant either failed to object to the prosecutor's comments,

made only a general objection, or failed to request curative

instructions. In any event, the challenged comments do not require

reversal." Ayala, 4 A.D.3d at 480. (internal citations omitted).

The Court finds that the state court's decision was not contrary

to, and did not involve an unreasonable application of, clearly

established Federal law.

At the outset, as the state court correctly noted,

Petitioner procedurally defaulted with respect to some of his

arguments because Petitioner failed to object to a number of the statements, or made only general objections, during the trial. See King v. Greiner, No. 02-CV-5810, 2008 U.S. Dist. LEXIS 74493, at *92 (S.D.N.Y. Sept. 26, 2008) ("Failure to specify the grounds for a claim of error at the time of an objection (either because an objection is general, or because it specifies a different ground than that raised on appeal) renders claims not specified unpreserved for appellate review.")

Next, Petitioner requested, and received, additional jury instructions to cure any prejudice cause by the prosecutor's statements that there was no evidence to contradict Detective McGovern's testimony. The trial court instructed the jury that the defendant is not required to provide or produce any evidence regarding any matter or issue in this case. The Court finds that this additional jury instruction remedied any potential prejudice caused by the prosecutor's comments regarding Detective McGovern's testimony.

Additionally, some of the prosecutor's comments, such as the prosecutor's characterization of the Petitioner as "different" and "bad" like other criminals, were in direct response to defense counsel's attempt to persuade the jury not to listen to their emotions and catagorize the Petitioner. (See Trial Tr. 277, March 24, 2000.) Defense counsel argued: "There are in this courtroom no people like them. . . . There's no one different when it comes

to sitting in this courtroom. . . . I live in this country, you live in this country, he lives in this country. . . . You must reject those appeals to those sentiments." (Id.) The prosecution is entitled to rebut arguments raised during Petitioner's summation, "'even to the extent of permitting the prosecutor to inject his view of the facts to counter the defense counsel's view of the facts.'" Readdon v. Senkowski, No. 96-CV-4722, 1998 WL 720682, at *4 (S.D.N.Y. 1998) (quoting Orr v. Schaeffer, 460 F. Supp. 964, 967 (S.D.N.Y. 1978)). "Where a prosecutor's statement is responsive to comments made by defense counsel, the prejudicial effect of such objectionable statements is diminished." Pilgrim v. Keane, No. 97-CV-2148, 2000 WL 1772653, at *3 (E.D.N.Y. Nov. 15, 2000).

Finally, the Court agrees with the state court that the challenged comments do not require reversal. Even if the prosecutor's remarks rose to the level of misconduct, Petitioner has not demonstrated that his trial was infected with unfairness, or that the outcome of his trial would have been different absent the alleged error. See, e.g., King v. Greiner, No. 02-CV-5810, 2008 U.S. Dist. LEXIS 74493, at *107 (S.D.N.Y. Sept. 26, 2008) ("Even assuming arguendo that the prosecutor's characterization of King as a "career criminal" improperly suggested a criminal propensity, it does not approach a level justifying habeas relief."); Bien v. Smith, 546 F. Supp. 2d 26, 50 (E.D.N.Y. 2008)

(finding that prosecutor's comments during summation that the case was "about excuses, mainly in the form of a large vodka bottle or any other bottle that this defendant has been hiding behind his entire life. . . . This case has never been about a man, and when [I] talk about him I truly use the word man loosely" were not prejudicial and did not substantially impact the jury's verdict.).

Accordingly, the Court rejects Petitioner's allegation that the prosecutor engaged in misconduct depriving him of a fair trial.

B.     Sufficiency of the Evidence

Second, Petitioner argues that the weight of the evidence at trial did not sufficiently support his conviction of murder and arson. Specifically, he argues that his confession is tainted due to the circumstances under which it was given, that other individuals were more likely to have committed the crimes, and that no physical evidence connected him to the crime. (Appellant's Br. 18, 19.)

On appeal, the Appellate Division found, "The defendant's contention that the evidence was legally insufficient to establish his guilt is unpreserved for appellate review. In any event, viewing the evidence in the light most favorable to the prosecution . . . , we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, upon the exercise of our factual review power, we are satisfied that the

verdict of guilt was not against the weight of the evidence."
Ayala, 4 A.D.3d at 480. (internal citations omitted).[1]

"The Due Process Clause of the Fourteenth Amendment prohibits conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the Petitioner] is charged.'" Einaugler v. Supreme Court of the State of New York, 109 F.3d 836, 840 (2d Cir. 1997) (quoting In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073, 25 L. Ed. 2d 368 (1970)). Petitioner is only "entitled to habeas corpus relief if it is found that upon the evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92, 61 L. Ed. 2d 560 (1979). The evidence must be viewed "in the light most favorable to the prosecution." Id. at 319. When challenging the sufficiency of the evidence in a state criminal conviction, a petitioner "bears a heavy burden." Einaugler, 109 F.3d at 840. Additionally, "the government receives the benefit of

---

[1] The Court notes that counsel for Respondent, Thomas C. Costello, Esq., has utterly failed in his obligation to review his opposition papers prior to submitting them to the Court. Counsel has submitted large block quotes purportedly from Respondent's Appellate Brief. However, the quotes clearly have been copied and pasted from another case, as they discuss a "taxi . . . found, riddled with bullet holes, mere yards away from the spot where the victim left it" and a victim who was "alert to the general threat of danger which cab drivers faced." (Res. P. 18.) It is inconceivable how counsel could copy and paste quotes in two pages of his brief discussing a taxi driver victim, when this case involves the murder of a pet-store owner.

having all permissible inferences drawn in its favor." <u>Dixon v.</u> <u>Miller</u>, 293 F.3d 74, 81 (2d Cir. 2002) (<u>citing</u> <u>United States v.</u> <u>Martinez</u>, 54 F.3d 1040, 1042 (2d Cir. 1995)).

Applying the above standard, the Court finds the evidence sufficiently supports Petitioner's convictions. The prosecution presented ample evidence from which the jury could reasonably conclude that Petitioner was guilty of the crimes charged. Petitioner, after being read his Miranda rights, wilfully gave an oral confession, as well as allowed an officer to transcribe his confession. The confession provides overwhelming evidence of guilt, as it describes striking the victim with a pipe, as well as igniting a fire in the store. Evidence was presented that the cause of death was trauma to the head and that Mr. Serra suffered at least two blows to the head. Additionally, testimony by the Petitioner's brother, Adolfo Diaz, provided evidence that Petitioner and Santalis brought bags of Circle K feed to sell at Billy's Pet Shop shortly after the crimes took place. Given the considerable evidence that supports the Petitioner's guilt in the crimes charged, Petitioner fails to meet the demanding standard for overturning the jury's verdict. Thus, Petitioner's claim for insufficiency of evidence is without merit, and he is not entitled to habeas relief on this ground.

The Court rejects Petitioner's argument that his confession was coerced. "No single criterion controls whether an

accused's confession is voluntary: whether a confession was obtained by coercion is determined only after careful evaluation of the totality of the surrounding circumstances." The factors to be considered include "the characteristics of the accused, such as his experience, background, and education; the conditions of the interrogation; and the conduct of law enforcement officials, notably, whether there was physical abuse, the period of restraint in handcuffs, and use of psychologically coercive tactics." Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997). The Court has reviewed the record thoroughly and finds that Petitioner's confession was voluntary. There is no evidence of physical abuse or psychological coercion during Petitioner's questioning. Petitioner was allowed breaks to use the restroom and a break to eat pizza. After taking his confession, the detectives read Petitioner the statement to ensure its accuracy. In sum, the record reveals that Petitioner, through his own volition, confessed to his crimes. Thus, the Court rejects Petitioner's argument that his statement was not voluntary.

     C.    Jury Instruction Claim

Third, Petitioner argues that the trial court's instructions to the jury on the count of arson in the third degree was deficient such that it violated his due process rights. Specifically, he claims that the instruction failed to include the essential element "that the defendant must intentionally start a

fire." (Appellant's Br. 20.)

Jury instructions in a state trial are normally a matter of state law, not reviewable on a federal habeas corpus petition absent a showing that the alleged errors amounted to a deprivation of the Petitioner's constitutional rights. <u>United States ex rel. Smith v. Montanye</u>, 505 F.2d 1355, 1359 (2d Cir. 1974), <u>cert. denied</u>, 423 U.S. 856, 96 S. Ct. 106, 46 L. Ed. 2d 81 (1975). A federal court may not overturn a conviction where such an instruction was used merely because the charge was undesirable or erroneous. The Supreme Court has recognized that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." <u>Cupp v. Naughton</u>, 414 U.S. 141, 146-47, 94 S. Ct. 396, 400, 38 L. Ed. 2d 368 (1973). While this does not mean a jury charge can never rise to the level of a constitutional error, it does establish that the constitutionality of the conviction must be viewed in context. <u>See id.</u>

In the instant case the trial judge did, in fact, instruct the jury that starting a fire is an essential element of arson. The relevant portion of the jury instruction stated: "Under our law, a person is guilty of Arson in the Third Degree when that person intentionally damages a building by starting a fire." Considering the totality of instructions given to the jury, the trial court's instruction on Arson was legally sufficient. The

jury could easily gather from the entire charge the correct law to be applied in reaching a verdict.

D. <u>Excessive Sentencing</u>

Finally, Petitioner argues that his sentence was harsh and excessive, and should be reduced in the interest of justice. Specifically, he requests that his sentence for the murder convictions be reduced to the minimum required by law, and that his sentence for the arson conviction run concurrently with his murder convictions.

The Supreme Court has held that "for crimes concededly classified and classifiable as felonies . . . the length of the sentence actually imposed is purely a matter of legislative prerogative." <u>Rummel v. Estelle</u>, 445 U.S. 263, 274, 100 S. Ct. 1133, 1139, 63 L. Ed. 2d 382 (1980). A federal court is prohibited from substituting its judgment for that of the state when the state has imposed a sentence within the range of statutorily permissible sentences and there is no constitutional issue to address. <u>White v. Keane</u>, 969 F.2d 1381, 1383 (2d Cir. 1992). Where a petitioner's sentence falls within the range prescribed by state law, federal courts will recognize no federal constitutional issue. See <u>Grant v. Graham</u>, No. 08-CV-10453, 2009 WL 3401181, at *10, n.7 (S.D.N.Y. Oct. 19, 2009) (<u>citing</u> <u>White v. Keane</u>, 969 F.2d 1381, 1383 (2d Cir. 1992)). This rule applies even if the sentence imposed constitutes the maximum term permissible under the statute. See <u>Wright v.</u>

Conway, No. 06-CV-0319, 2009 WL 2982978, at *7 (N.D.N.Y. Sept. 14, 2009); see also Warren v. Conway, No. 07-CV-4117, 2008 WL 4960454, at *30 (E.D.N.Y. Nov. 18, 2008) (citing United States v. Gonzalez, 922 F.2d 1044, 1053 (2d Cir. 1991) (finding that courts should review the disproportionality of sentences only in rare cases because the legislature's fixing of terms for imprisonment is presumptively valid)).

Finally, to the extent that Petitioner seeks to argue that the imposed sentences constitute a violation of the Eighth Amendment to the United States Constitution, which prohibits the imposition of a sentence that is "grossly disproportionate to the severity of the crime[,]" Rummel v. Estelle, 445 U.S. 263, 271, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980), he again misses the mark. "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare.'" Kirton v. Ercole, No. 08-CV-0719, 2009 WL 3644344, at *11 (N.D.N.Y. Oct. 28, 2009) (alterations omitted) (quoting Rummel, 445 U.S. at 272); see Harmelin v. Michigan, 501 U.S. 957, 995, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (holding that the Eighth Amendment forbids only sentences which are "grossly disproportionate" to the crime). A sentence of imprisonment which is within the limits of a valid state statute is simply not cruel and unusual punishment in the constitutional sense. Kirton, 2009 WL 3644344, at *11; Brumfield v. Stinson, 297 F. Supp. 2d 607, 622

(W.D.N.Y. 2003). Here, Petitioner has completely failed to provide evidence, let alone convincingly establish, that the imposed sentences are grossly disproportionate to the crimes he was convicted of or otherwise violative of his Eighth Amendment rights.

Therefore, he is not entitled to habeas relief on this ground.

## III. A Certificate of Appealability is Denied

The Court will not issue a certificate of appealability in this case. Petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C § 2253. The issues involved in this case are not debatable among reasonable jurors, a court could not resolve the issues in a different manner, and the questions involved do not deserve encouragement to proceed further. See Lucidore v. N.Y. State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000).

CONCLUSION

For the reasons stated above, the Court DENIES Petitioner's writ of habeas corpus in its entirety. The Court will not issue a certificate of appealability. The Clerk of the Court is directed to mark this matter as CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    Central Islip, New York
          November   23  , 2009